\* NOT FOR PUBLICATION \*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, :<br><br>Plaintiff, :<br><br>v. :<br><br>ABRAHAM HOLTZMAN, and THE STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, :<br><br>Defendants. : | Civ. Action No.: 14-00113 (FLW)<br><br>**OPINION** |

**WOLFSON, United States District Judge:**

Presently before the Court is a motion to dismiss filed by *pro se* defendant Abraham Holtzman[1] ("Holtzman" or "Claimant") challenging the sufficiency of the Complaint for Interpleader Relief ("Complaint") by plaintiff The United States Life Insurance Company in the City of New York ("U.S. Life" or "Stakeholder"). In response, U.S. Life opposes the motion to dismiss, and it filed a cross-motion for interpleader relief. The instant matter arises out of a dispute over payments made in connection with two separate long-term visitations at a custodial care facility. In the instant motion, Holtzman alleges, *inter alia*, that U.S. Life's Complaint is deficient on the grounds that: (1) the Court lacks subject

---

[1] Defendant State of New Jersey, Department of Human Services, Division of Medical Assistance and Health Services ("Medicaid" or "Claimant") is also a Claimant in the instant matter. Both Holtzman and Medicaid claim to be entitled to the disputed funds.

matter jurisdiction, (2) the Court lacks personal jurisdiction over Holtzman, (3) the Court is an improper venue, (4) Holtzman was improperly served, and (5) the Complaint fails to state a claim upon which relief can be granted. In their cross motion, U.S. Life seeks to deposit the disputed fund with the Court; and thus, U.S. Life would be discharged from all liability stemming from the instant matter. After carefully considering the submissions of the parties, the Court **DENIES** Holtzman's motion to dismiss, and the Court **GRANTS** U.S. Life's cross-motion for interpleader relief, which is conditioned upon U.S. Life depositing the disputed funds -- in the amount of $109,430.76 -- into the registry of the Court.

## BACKGROUND AND PROCEDURAL HISTORY

In 1996, Holtzman submitted an application for participation in the New York State United Teachers Catastrophe Major Medical Insurance Plan. Pl.'s Compl. ¶ 6. Shortly after, U.S. Life[2] issued a Certificate of Insurance to Holtzman for the group policy E-170, 129 provided by the policyholder, the New York State United Teachers Benefit Trust ("Group Policy"). Id. at ¶ 7. As a result, Holtzman and his two dependent children, Jacob Holtzman ("Jacob") and Zipora Holtzman ("Zipora"), were insured. Id.

Under the Group Policy, an insured party is entitled to major medical benefits to be paid each benefit period, which is five years, after the cash deductible is satisfied. See id. at ¶¶ 8-9. The cash deductible is the amount of covered expenses that each insured party must incur before U.S. Life pays any benefits. See id. For each person, the cash deductible

---

[2] The administrator of the Group Policy is Marsh Affinity Group Services, a service of Seabury & Smith New York State Untied Teachers Insurance Plan ("Marsh"). Id. at ¶ 14. Holtzman submitted his claims to Marsh, and he was in correspondence with Marsh. For the sake of clarity, however, the Court will refer to Marsh as U.S. Life, underwriter carrier of a Group Policy.

for an accumulation period, which is thirty-six consecutive months, is the greater of the benefits of the basic plan or $25,000.00. Importantly, the Group Policy provides an insured party with care in a convalescent home or custodial care facility in the amount of $500.00 per week for up to 156 weeks in a benefit period. Id. However, the Group Policy imposes a lifetime maximum of $80,000.00 for this particular benefit. Id.

Starting in 2002, both Jacob and Zipora sadly required admittance to Bergen Regional Medical Center ("Bergen Medical"), a custodial care facility. See id. at ¶¶ 11-12. Jacob was a resident at Bergen Medical from June 5, 2002 to April 24, 2004. Id. at ¶ 11. Zipora was a resident at Bergen Medical from December 1, 2002 to April 25, 2005, the day she passed away. Id. at ¶¶ 12-13. On February 1, 2004, Holtzman filed claims with U.S. Life. Id. at ¶ 14. A couple of months later, U.S. Life sent a letter to Holtzman indicating that the benefits exceeded the $25,000.00 cash deductible. Id. at ¶ 15. Ten days later, U.S. Life sent a letter to Bergen Medical informing the custodial care facility that Holtzman submitted expenses for consideration of benefits under the Group Policy. Id. at ¶ 16.

After approximately three years, U.S. Life sent a letter to Holtzman on August 15, 2007. In the letter, U.S. Life indicated to Holtzman that Medicaid is intended to be the payor of last resort. Id. at ¶ 17. U.S. Life told Holtzman that Medicaid recipients are required to assign to the state any rights to payment for medical care from any legally liable third party payor. Id. U.S. Life further told Holtzman that Medicaid has a legal obligation to purse the other plan for reimbursement, and the health plan is obligated to honor any assignment of benefits rights made to Medicaid. Id. On May 5, 2008, U.S. Life notified Holtzman that Medicaid made payments for both Jacob and Zipora during their stays at Bergen Medical; and thus, the Group Policy should have paid for the visitations prior to

payments made by Medicaid. Id. at ¶¶ 19-20. On June 3, 2008, Holtzman faxed a letter to U.S. Life stating that he thought U.S. Life is not a legally liable third party payor to Medicaid, and he requested that U.S. Life make payments on all past and future claims. Id. at ¶ 21.

On June 13, 2008, Medicaid requested reimbursement from U.S. Life for both Jacob and Zipora. See id. at ¶¶ 22-23. For Jacob, Medicaid requested reimbursement in the amount of $139,064.58 because Jacob was a Medicaid recipient from March 1, 2002 to April 24, 2004. Id. at ¶ 22. For Zipora, Medicaid requested reimbursement in the amount of $180,507.46 because Zipora was a Medicaid recipient from November 1, 2002 to April 25, 2005. Id. at ¶ 23. Approximately one month later, U.S. Life informed Holtzman that U.S. Life determined that it was obligated to reimburse Medicaid; however, U.S. Life informed Holtzman that he could appeal the decision within 180 days of the receipt of the letter. Id. at ¶ 24. On October 1, 2008, Holtzman notified U.S. Life of his formal appeal. Id. at ¶ 29. After unsuccessful negotiations, U.S. Life informed Holtzman that he owed $46,929.51 in benefits for Jacob, and $62,501.25 in benefits for Zipora. See id. at ¶¶ 32-33. In that regard, since Holtzman challenged Medicaid's request for reimbursement, the disputed funds in this case equal $109,430.76.

On January 14, 2014, U.S. Life filed its Complaint. On March 21, 2014, Holtzman filed a motion to dismiss on several grounds, including that U.S. Life lacks the capacity to sue or be sued. On April 2, 2014, U.S. Life opposed Holtzman's motion to dismiss the Complaint, and it filed a cross-motion for interpleader relief requesting that U.S. Life be discharged from all liability stemming from the benefits payable under the Group Policy.

In the following months, both Holtzman and U.S. Life supplied the Court with briefing in support of and opposition to the motion to dismiss and the subsequent cross-motion.

## DISCUSSION

**I.     U.S. Life's Capacity to Sue or Be Sued**

Before the Court reaches the merits, the Court must determine whether U.S. Life maintains the capacity to sue or be sued because it is the foundation of almost all of Holtzman's legal contentions, such as subject matter jurisdiction.[3] Holtzman generally argues that U.S. Life is a non-existent corporation, and thus, it lacks capacity to sue or be sued. According to Holtzman, the Department of State of New York does not have a record of U.S. Life's Certificate of Incorporation. However, U.S. Life counters that it is a New York insurance company in good standing, and it has the capacity to sue or be sued. The Court agrees.

For a corporation, the capacity to sue or be sued is determined "by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Under New York law, the "doctrine of legal capacity… concerns a litigant's power to appear and bring its grievances before the court." Sec. Pac. Nat. Bank v. Evans, 31 A.D.3d 278, 279 (N.Y. App. Div. 1st Dep't 2006). Here, U.S. Life has supplied the Court with a copy of the Certificate of Authority, which states that U.S. Life is organized under the laws of New York, and it is licensed to engage in life insurance, annuities, and accident and health insurance within the state of New York. See Pl.'s Br. in Opp., McKay Cert., Ex. N. In addition, U.S. Life has provided the Court

---

[3] For example, Holtzman argues that the Court does not have jurisdiction because U.S. Life is a non-existent company, and thus, "it's a legal ghost and this ghost could not walk into a court or use electric filing" to file a complaint or a motion. Def.'s Br. in Opp. at 5.

with a Certificate of Good Standing, which states that U.S. Life "is duly authorized in the State of New York to transact the business of life, annuities and accident and health insurance as specified in the paragraph(s) 1, 2 and 3 of Section 1113(a) of the New York Insurance Law, and has been continuously licensed and remains in good standing to the date of this certification." Pl.'s Br. in Opp., McKay Cert., Ex. O. The Certificate of Good Standing is dated April 8, 2014.

Based on these documents, U.S. Life obviously has the power to bring its grievances, and have grievances brought against it, before both state and federal courts. See e.g. Metz v. U.S. Life Ins. Co. in City of New York, 662 F.3d 600 (2d Cir. 2011); and, U.S. Life Ins. Co. in City of New York v. Blumenfeld, 92 A.D.3d 487 (N.Y. App. Div. 2012). Accordingly, the Court is convinced that U.S. Life is an insurance company, in good standing, organized and licensed under the laws of New York; and thus, it maintains the capacity to sue or be sued in this instant action.

**II.     Interpleader**

**A.     Standard Of Review**

"There are two methods for bringing an interpleader in federal court." Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007); see New Jersey Sports Prods., Inc. v. Don King Prods. Inc., 15 F. Supp. 2d 534, 539 (D.N.J. 1998) ("An interpleader action may be brought in federal court pursuant to two different, yet overlapping, procedural devices"). The first source is 28 U.S.C. § 1335 ("interpleader statute"). The interpleader statute grants district courts original jurisdiction if certain requirements are met. See Lexington Ins. Co. v. Jacobs Indus. Maint. Co., 435 Fed. App'x 144 (3d Cir. 2011). The second source is Federal Rule of Civil Procedure 22 ("interpleader rule"). Id. "Unlike its statutory

counterpart, rule interpleader is no more than a procedural device; the plaintiff must plead and prove an independent basis for subject matter jurisdiction." Price, 501 F.3d at 275; see 28 U.S.C. § 1331; 28 U.S.C. § 1332. Here, U.S. Life brings the instant interpleader action under the interpleader statute.[4]

The Supreme Court has reasoned that the interpleader statute is "remedial and to be liberally construed." State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 534 (1967). "The equitable remedy of interpleader allows a person holding property to join in a single suit two or more persons asserting claims to that property." Price, 501 F.3d at 275 (internal citations omitted); see NYLife Distributors, Inc. v. Adherence Grp., Inc, 72 F.3d 371, 382 (3d Cir. 1995) ("it has long been recognized that the interpleader statute is remedial, aimed at assisting a party who fears the vexation of defending multiple claims to a fund or property under his control by providing him the opportunity to satisfy his obligation in a single proceeding."); see also Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009). In an interpleader action, the plaintiff "is a stakeholder that admits it is liable to one of the claimants, but fears the prospect of multiple liability." Price, 501 F.3d at 275. After a stakeholder files suits and deposits the property with the court, it may "withdraw from the proceedings." Id. As a result, "[t]he competing claimants are left to litigate between themselves", and "[t]he stakeholder avoids multiple liability". Id.

In a statutory interpleader action, a district court typically: (1) "determines whether the requirements of the statute have been meet and whether the stakeholder may be relieved

---

[4] In their Complaint, U.S. Life asserts both 28 U.S.C. § 1335 and Fed. R. Civ. P. 22. In their moving papers, however, U.S. Life bases its entire argument on the interpleader statute. Moreover, U.S. Life cannot satisfy the interpleader rule requirement of complete diversity because U.S. Life and Holtzman are both citizens of New York. Accordingly, the Court will examine the merits of the Complaint pursuant to the interpleader statute.

from liability" (2) and, "it actually adjudicates the defendant's adverse claims to the interpleaded fund." NYLife Distributors, Inc. v. Adherence Grp., Inc, 72 F.3d 371, 375 (3d Cir. 1995). "The second stage, which proceeds like any other action, is ultimately resolved by the entry of judgment in favor of the claimant who is lawfully entitled to the stake." Id. U.S. Life, however, only asks the Court to determine whether the requirements of the interpleader statute have been meet and whether U.S. Life may be relieved from liability.

B. **Whether U.S. Life Has Met the Requirements of The Interpleader Statute And Whether U.S. Life May Be Relieved From Liability**

At the outset, the Court notes that U.S. Life has not deposited the disputed funds into the registry of the Court. According to the interpleader statute, the Court only has jurisdiction if "the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court". 28 U.S.C. § 1335(a)(2). The interpleader statute is unambiguous and the deposit requirement is a jurisdictional prerequisite. In their supplemental briefing, however, U.S. Life maintains that the Court should not dismiss the this case for lack of jurisdiction, but rather, the Court should afford U.S. Life the opportunity to cure the jurisdictional defect.

The Third Circuit has noted that the failure of a stakeholder to deposit the full amount in controversy is a defect that the stakeholder should be permitted to cure. See CNA Ins. Companies v. Waters, 926 F.2d 247, 249 n.6 (3d Cir. 1991); see also U.S. Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 210 (3d Cir. 1999). In addition, other courts have concluded that although the stakeholder "neither deposited the policy funds in question into the registry of the court nor entered into an appropriate bond in lieu thereof, as required by § 1335(a)(2), this is a jurisdictional defect that a stakeholder may easily cure

and is therefore insufficient to defeat an otherwise appropriate statutory interpleader action." Lincoln Gen. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 425 F. Supp. 2d 738, 742 (E.D. Va. 2006) (citing CNA Ins. Companies, 926 F.2d at 249 n.6); see also Legacy Inv. & Mgmt., LLC v. Susquehanna Bank, 2013 WL 5423919, at *5 (D. Md. Sept. 26, 2013) ("However, an interpleader stakeholder that does not immediately deposit the disputed funds with the Court is entitled to perfect jurisdiction by moving to deposit the funds at a later time, as long as there is no 'persistent failure' to perfect subject matter jurisdiction"). Accordingly, I do not find that this case should be dismissed for U.S. Life's failure to deposit the disputed funds; rather, the Court is directing U.S. Life to deposit $109,430.76 into the registry of the Court.

Next, Holtzman argues that U.S. Life's Complaint is defective because the Court does not have subject matter jurisdiction or personal jurisdiction over Holtzman, and this Court is not the proper venue. In addition, Holtzman argues that U.S. Life did not properly serve Claimant. U.S. Life contends that the Court maintains subject matter jurisdiction and personal jurisdiction over Holtzman, and the Court is the proper venue pursuant to the interpleader statute. Furthermore, U.S. Life argues that Holtzman was properly served. For the following reasons, the Court concludes that U.S. Life has conditionally met the requirements of the interpleader statute, and U.S. Life may be relieved from liability after it deposits the disputed funds into the Court's registry. See NYLife Distributors, Inc. v. Adherence Grp., Inc, 72 F.3d 371, 375 (3d Cir. 1995).

Pursuant to 28 U.S.C. § 1335, federal district courts have jurisdiction to hear an interpleader action. That statute provides:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or

>corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
>
>>(1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if
>>
>>(2) The plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
>
>(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

Plainly stated, a district court has original jurisdiction "'of any civil action of interpleader' if the value of the stake at issue is '$500 or more' so long as '[t]wo or more adverse claimants, of diverse citizenship…, are claiming or may claim to be entitled to such money or property' and the plaintiff has deposited the money or property at issue, or a bond for such, with the court." Lexington Ins. Co. v. Jacobs Indus. Maint. Co., 435 Fed. App'x 144, 147 (3d Cir. 2011) (quoting 28 U.S.C. § 1335).

Here, the Court maintains subject matter jurisdiction in the instant matter. Both Holtzman and Medicaid claim to be entitled to the disputed funds. In short, Medicaid made payments for Jacob and Zipora to reside at the custodial care facility, but it is seeking reimbursement from U.S. Life, the underwriter carrier of a Group Policy. However,

Holtzman adamantly disagreed with Medicaid's determination, and he strongly urged U.S. Life that Medicaid should not be reimbursed. In addition, the adverse claimants are minimally diverse because Holtzman is a citizen of New York, and Medicaid is a citizen of New Jersey. See Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007). Furthermore, the amount in controversy significantly exceeds the amount in controversy threshold of $500. Finally, U.S. Life has been directed, and it is ready and willing, to deposit the funds with the Court.

The Court also maintains personal jurisdiction over Holtzman. The interpleader statute provides for nationwide service of process on all claimants. See 28 U.S.C. § 2361. The Third Circuit has held that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 369 (3d Cir. 2002). In determining national contacts, a court should examine the extent to which the defendant "availed himself of the privileges of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States." Id. at 370. Under that standard, it is clear that Holtzman has sufficient national contacts to establish personal jurisdiction.

This Court is a proper venue. Pursuant to 28 U.S.C. § 1397, "[a]ny civil action of interpleader or in the nature of interpleader under § 1335 of this title may be brought in the judicial district in which one or more of the claimants reside." Here, Claimant Medicaid is a citizen of New Jersey. Moreover, U.S. Life properly served Holtzman. Pursuant to Fed. R. Civ. P. 4(e)(2), the Summons and Complaint may be served on an individual by "leaving a copy of each at the individual's dwelling… with someone of suitable age and discretion

who resides" at the dwelling. Here, U.S. Life has certified that Holtzman's wife was served with a copy of the initial Summons and Complaint at the Holtzman dwelling by an authorized process server on January 16, 2014. See Pl.'s Br. In Opp., Kelly Cert., Ex. B.

Additionally, because U.S. Life has shown that it admits that it is liable to one of the Claimants, but it wishes to avoid multiple liabilities, the Court finds that U.S. Life may be relieved of liability stemming from the benefits payable under the Group Policy; however, the relief is conditioned upon U.S. Life depositing the disputed funds into the registry of the Court.[5] See Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007).

**III. ATTORNEY'S FEES**

U.S. Life argues that it is entitled to an award of reasonable attorney's fees and costs associated with the interpleader action. Holtzman, however, does not address the issue of attorney's fees and costs.

"A court has the discretion to award to an interpleader plaintiff attorneys fees and costs if the plaintiff is (1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability." Metropolitan Life Ins. Co. v. Kubichek, 83 F. App'x 425, 431 (3d Cir. 2003) (internal quotations omitted). In an interpleader action, a plaintiff may be entitled to costs and reasonable counsel fees out of the funds deposited with the court. Callwood v. V.I. Nat'l Bank, 221 F.2d 770, 780 (3d Cir.1955); see Banner Life Ins. Co. v. Lukacin, No. 13-6589, 2014 WL 4724902 (D.N.J. Sept. 22, 2014).

---

[5] In the instant matter, the Court need not engage in a formal analysis under Fed. R. Civ. P. 12(b)(6) because the Court has already determined that U.S. Life's Complaint, and its cross-motion, are sufficient to grant relief.

Since the stakeholder "is considered to be helping multiple parties to an efficient resolution of the dispute in a single court," courts usually find that the stakeholder attorney's fees are justified. Banner Life Ins. Co., 2014 WL 4724902, at * 3 (quoting Frontier Ins. Co. v. Mission Carrier, Inc., 1992 WL 209299, at *2 (D.N.J. Aug. 24, 1992)). In addition, the work required to bring an interpleader suit is minimal; and thus, "the fee award should not seriously deplete the fund." Id. However, attorney's fees will not be awarded for work that was "excessive, redundant, or otherwise unnecessary." Banner Life Ins. Co., 2014 WL 4724902, at * 4 (quoting Prudential Ins. Co. of Am. v. Fantaye, 2009 WL 482699, at *2 (D.N.J. Feb. 19, 2009)).

U.S. Life is a disinterested stakeholder who has conceded liability. In its Complaint and cross-motion, U.S. Life has sought to discharge itself from liability stemming from the benefits payable under the Group Policy. Accordingly, the Court finds that U.S. Life is entitled to reasonable attorney's fees and costs once it has deposited the disputed funds with the Court. See Metropolitan Life Ins. Co. v. Kubichek, 83 Fed. Appx. 425, 431 (3d Cir. 2003). However, U.S. Life must make a separate application for the amount of fees to be awarded.

## CONCLUSION

In sum, the Court concludes that U.S. Life maintains the capacity to sue or be sued. In addition, the Court also concludes that U.S. Life has conditionally met the requirements of the interpleader statute and it may be relieved from liability. Accordingly, the Court **DENIES** Holtzman's motion to dismiss, and the Court **GRANTS** U.S. Life's cross-motion for interpleader relief, which is conditioned upon U.S. Life depositing $109,430.76 into the registry of the Court.  Furthermore, U.S. Life must make a separate application for the amount of fees to be awarded within 10 days from the date of the Order accompanying this Opinion.


DATED:  October 14, 2014                           /s/ Freda L. Wolfson
                                                   Freda L. Wolfson
                                                   United States District Judge